# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

**In Re**

JOSE J. MARTINEZ and
SUZETTE C. MARTINEZ,

**Debtors.**

**Bankruptcy Case
No. 09-40589-JDP**

_____

## MEMORANDUM OF DECISION RE
## VALUE OF DEBTORS' HOUSE

_____

**Appearances:**

David E. Gabert, Pocatello, Idaho, Attorney for Debtors.

Holger Uhl, McCarthy & Holthus, LLP**,** Boise, Idaho, Attorney for
CitiMortgage Inc.

Kathleen McCallister, Kuna, Idaho, Chapter 13 Trustee.

In connection with consideration of confirmation of a proposed plan

in this chapter 13[1] case, the Court must determine the value of the home

---

[1] Unless otherwise indicated, all chapter and section references are
to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are
to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

owned by Debtors Jose J. Martinez and Suzette C. Martinez.  The following

constitutes the Court's findings of fact and conclusions of law pursuant to

Rules 7052 and 9014.

*Findings of Fact and Conclusions of Law*

Debtors filed a chapter 13 case on April 27, 2009.  In their schedule A

of real property, they listed a home in Blackfoot, Idaho, which they valued

at $197,294.  Docket No. 20.  CitiMortgage Inc. ("Citi") holds both the first

and second priority mortgages on the home in the amount of $216,271.93

and $71,728.04, respectively.  Docket No. 76.

On September 10, 2009, Debtors filed their proposed Second

Amended Plan.  Docket No. 43.  Both Trustee and Citi objected to

confirmation.  Docket Nos. 48; 49.  In that plan, Debtors propose to pay

their first mortgage in full, but "move the Court to determine that

CitiMortgage's second mortgage on Debtor's [sic] real property has no

allowed secured value, is wholly unsecured, and should be treated as an

unsecured, non-priority creditor/claim under the Debtors' plan," Docket

No. 43, ¶ 5.1.  Debtors also move to "strip" Citi's lien arising from the

MEMORANDUM OF DECISION- 2

second mortgage because, Debtors allege, there is no equity in the

property to support that mortgage, and that "any lien rights [of Citi under

the second mortgage] will be avoided in its entirety upon completion of

the plan". *Id*. Citi objects to the lien-strip of its second mortgage,

contending that there is equity in the home to support it. *See* Docket Nos.

48; 76. Therefore, in order to determine whether Debtors' plan may be

confirmed, among other issues, the Court must fix the value of Debtors'

home.

Curiously, neither Debtors nor Citi opted to offer live testimony or

evidence at a hearing regarding the value of the home. Instead, the parties

agreed to submit only documentary valuation evidence via "stipulation,"

something they accomplished on May 11, 2010, when they filed a joint

pleading described as an "Amended Notification of Documentary

Evidence for the Record," Docket No. 80, signed by counsel for both

Debtors and Citi. For proof of value, that document asks the Court to

consider two opinions: the county's property tax assessment as to the

house and land, attached as Ex. 100 to Docket No. 65 ("Assessment"); and

MEMORANDUM OF DECISION- 3

the report of the "Mark Liebel Appraisal," attached as Ex. 101 to Docket

No. 72 ("Liebel Appraisal").

1. Valuation.

The Assessment is the 2009 Bingham County assessor's report on the

house.  It fixes the value of Debtors' home and land at $197,294.  Ex. 100.

According to the Assessment, the home was last appraised by the county

in 2004.  *Id*.

The Liebel Appraisal is the report of an appraisal commissioned by

CitiFinancial (as opposed to CitiMortgage), concerning the value of

Debtors' home as of March 16, 2010.  The appraiser was Mark Liebel.

Although the report indicated Mr. Liebel is licensed by the state to

appraise houses, there is no information in the report about his

qualifications.  However, based upon the Court's extensive experience in

reviewing appraisers' work-product, the Liebel Appraisal appears to be

professionally-done, and the opinions expressed therein are well-

documented with ample information about Debtors' house, and

considerable data about the relevant real estate market and comparable

MEMORANDUM OF DECISION- 4

sales of homes in the area where Debtors' house is located.  The highlights

of this report include:

- the ultimate opinion that Debtors' home has a fair market value of $225,000;

- of the six comparable homes for sale in the neighborhood at the time of the report, asking prices ranged from $209,000 to $289,900;

- of the five comparable homes that were sold in the neighborhood in the last year, the sale prices ranged from $200,000 to $260,000;

- the appraiser rates the quality of the construction and condition of Debtors' home as "average";

- while the comparable properties differ in various respects with the features found in Debtors' home, the appraiser appears to apply a reasoned approach to making adjustments to indicate a value; and

- as near as the Court can tell from the report, the appraiser seems to have adhered to the usual, accepted  methodology in preparing the report.

Ex. 101.

Debtors urge the Court to consider that the economy has recently

experienced a significant, traumatic "recession," and as a result, that real

estate values have substantially declined, with home foreclosures

abounding.  However, Debtors offer no evidence to document how the

MEMORANDUM OF DECISION- 5

general economic downturn has impacted their home or the Bingham

County market, nor to support their argument that their home should be

valued consistent with the Assessment, a valuation which was apparently

based upon 2004 information.

On the other hand, there is nothing in the record to suggest that the

opinion of Mr. Liebel should be discounted, nor that he has disregarded

recent economic distress in fixing the value of Debtors' home as of March,

2010.  As noted above, his report is supported by current market data, and

his analysis and conclusions, in the Court's opinion, appear sound.

Based upon this limited record, the Court finds the fair market value

of Debtors' home to be $225,000.

2.  Lien Stripping.

To value a secured claim, the Court utilizes § 506(a), which

provides:

> An allowed claim of a creditor secured by a lien
> on property in which the estate has an interest . . .
> is a secured claim to the extent of the value of
> such creditor's interest in the estate's interest in
> such property . . . and is an unsecured claim to

MEMORANDUM OF DECISION- 6

> the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).  Thus, § 506(a) provides for the bifurcation of an allowed claim into its secured and unsecured components after a determination of the value of the collateral.  *In re Shook*, 278 B.R. 815, 822 (9th Cir. BAP 2002).   A claim, such as a mortgage, "is not a 'secured claim' to the extent that it exceeds the value of the property that secures it.  Under the Bankruptcy Code, a 'secured claim' is thus a term of art; not every claim that is secured by a lien on property will be considered a 'secured claim.'"  *In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002).

In the instant case, the Court has determined that the fair market value of Debtors' home is $225,000.  Citi's first mortgage is $216,271.93, leaving $8,728.07 in equity to secure the second mortgage.

MEMORANDUM OF DECISION- 7

Because there is equity in the home over and above the amount due on the first mortgage, Citi's second mortgage is a secured claim and can not be stripped in Debtors' plan. *See In re Zimmer*, 313 F.3d at 1223; *In re Lam*, 211 B.R. 36, 41(9th Cir. BAP 1997); *In re Millspaugh*, 302 B.R. 90, 96 (Bankr. D. Idaho 2003). Therefore, in order to be confirmed, Debtors' proposed plan will have to properly treat Citi's claim secured by the second mortgage as an allowed secured claim. §§ 1322(b)(2); 1325(a)(5).

### *Conclusion*

Because Debtors' home is valued at $225,000, there is equity to secure Citi's second mortgage, and the mortgage may not be stripped in Debtors' plan. As such, Debtors' plan must properly treat Citi's second mortgage claim as an allowed secured claim. Debtors are therefore instructed to either propose an amended plan properly treating Citi's second mortgage claim prior to the date of the next confirmation hearing, June 8, 2010, or upon request of Trustee or Citi, the case will be dismissed.

An appropriate order will be entered.

MEMORANDUM OF DECISION- 8

Dated:  May 25, 2010

Honorable Jim D. Pappas
United States Bankruptcy Judge